IN THE UNITED STATES DISTRICT COURT OF THE
NORTHERN DISTRICT OF WEST VIRGINIA

J. RON WRIGHT, in his capacity as
Administrator of the Estate of
TERRY LEE RICHARD, JR., *et al.*,

    Plaintiffs,

v.                                                                                     CIVIL ACT NO.: 1:15-CV-00205
                                                                                     The Honorable Irene Keeley

SBA COMMUNICATIONS CORP.,*et al.*,

    Defendants.

and

FDH, INC., now known as KCHM, Inc., FDH Engineering Inc., now
known as KCHM and ASSOCIATES, INC., *et al.*,

    Third-Party Plaintiffs,

v.

S&S COMMUNICATIONS SPECIALISTS, INC.,*et al.*,

    Third-Party Defendants,

THE ESTATE OF KYLE KIRKPATRICK, *et al.*,

    Cross Claimants,

S&S COMMUNICATION SPECIALISTS, INC.,
KCHM AND ASSOCIATES, INC.

    Cross Defendants.

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY OF THE ESCROW AGREEMENT
AND BANK ACCOUNTS FROM FDH, INC., NOW KNOWN AS KCHM, INC., FDH
ENGINEERING INC., NOW KNOWN AS KCHM AND ASSOCIATES, INC. AND TO
<u>EXTEND THE DISCOVERY PERIOD IF NECESSARY</u>**

Come now the plaintiffs, by counsel, and move this Court for an order directing FDH, Inc., now known as KCHM, Inc., and FDH Engineering Inc., now known as KCHM and Associates, Inc. ("FDH/KCHM") to produce the SBA Communications Specialist, Inc. mandated escrow agreement, the existence of which was disclosed at the July 17, 2018 Rule (30)(b)(6) deposition in this case, to disclose the amount of the money in the SBA mandated escrow fund, and to disclose the funds in the two (2) bank accounts that were discussed during recent depositions in this case.

Plaintiffs further move the Court for an extension of the discovery period for limited follow-up on the issues raised in this motion, if reasonably necessary, once the information is produced. In support of this Motion, plaintiffs state as follows.

1. Plaintiffs have pursued a number of discovery requests relevant to their contention that Velocitel, Inc. ("Velocitel") is a proper defendant in this case.

2. One of the requests at issue in the present Motion involves an escrow agreement that SBA required FDH/KCHM's stockholders to create as a condition for SBA's approval for FDH/KCHM to transfer its SBA contracts to Velocitel as part of the FDH/KCHM-Velocitel transaction. *See* Ex. A, Murphy Deposition (July 17, 2018), p. 58, line 19 - p. 59, line 4 (discussing SBA involvement in transferring projects from FDH/KCHM to Velocitel). Plaintiffs first learned about this escrow account at a 30(b)(6) deposition of FDH/KCHM CEO Christopher Murphy on July 17, 2018.[1]

---

[1] This escrow agreement is different from the escrow agreement included in the APA which, according to CEO Murphy, has been "paid out.". Ex. A, p. 16, line 15-p. 17, line 7 (explaining the two different escrow funds).

3. The other request at issue is for the funds left in two (2) bank accounts held by FDH/KCHM since the consummation of the sale to Velocitel. According to Mr. Murphy, these appear to have been retained by FDH/KCHM to cover the various costs of the dissolution of FDH/KCHM and are not significant. Ex. A, p. 13, line 7 - p. 15, line 24. However, the recent deposition testimony of FDH/KCHM stockholder John Fisher left the amount in those accounts uncertain. Although asked about the account, Mr. Fisher was instructed by FDH/KCHM counsel not to answer questions about the amount of money in the bank accounts.[2]

4. Plaintiffs have contended that Velocitel is a proper defendant in this case because the transaction between FDH/KCHM and Velocitel, although characterized as an "Asset Purchase Agreement" ("APA") was, in fact, the purchase of the entire business (less certain liabilities) and subjected Velocitel to liability as a successor corporation.[3]

---

[2] Mr. Fisher's deposition occurred on August 13, 2018, and therefore the transcript is not yet available.

[3] Although the purchaser of the assets of a corporation is not generally liable for the debts or liabilities of the corporation from which the assets were purchased, there are a number of well-settled exceptions that would result in a transferee corporation such as Velocitel being liable when it purchases virtually all of the assets of a corporation. The exceptions include: 1) an express or implied assumption of liability; 2) the transaction amounts to a consolidation or merger; 3) the transaction was fraudulent; 4) some of the elements of a purchase in good faith were lacking, as where the transfer was without consideration and the creditors of the transferor were not provided for; and 5) the transferee corporation was a mere continuation or reincarnation of the old corporation. *See Davis v. Celotex Corp.*, 187 W. Va. at 571, 420 S.E.2d at 562. In the present case, the facts known at present suggest that exceptions number 2, 3 and/or 4 may apply. Defendants may maintain that Delaware law on corporate successor liability applies to this matter. Plaintiffs believe it is a non-issue as to the choice of law because, at the Court noted during the July 26, 2017 Telephonic Scheduling Conference, the exceptions (assumption of liability, merger or consolidation, continuation of predecessor under a different name, and fraud) appear to be the same in both states. *See* 07/26/17 Telephonic Scheduling Conference transcript (Doc. 156, p. 12).

5. As described below, Velocitel actually purchased the entire business of FDH/KCHM, including its name, its employees, its offices and its contracts. Upon consummation of that purchase, FDH/KCHM ceased to do business, the payments from the sale were promptly disbursed to the FDH/KCHM shareholders and FDH/KCHM was left with liabilities, including the Despard Tower cases, and few assets beyond its insurance policies.[4]

6. Thus, whether Velocitel is a proper defendant depends in large part on whether the transaction falls within the exceptions in *Davis v. Celotex Corp.*[5] Although characterized as a purchase of assets, the transaction was a de facto merger and/or fraudulent in the way it was structured so as to separate assets from liabilities in the sale of an entire business, not just some of its assets, leaving FDH/KCHM effectively an empty shell. This empty shell status also points to another exception under *Davis*, whether the transaction demonstrates a lack of good faith because the creditors, such as these plaintiffs, were not fully provided for.

7. The escrow fund and bank accounts at issue in this Motion are relevant to whether Velocitel should be treated as a successor to FDH/KCHM. If the escrow account or the bank accounts described in recent depositions are assets of FDH/KCHM and are substantial, then – depending on the amount in those accounts – the plaintiffs' contention about the validity of the sale and the liability of Velocitel may be mistaken. Plaintiffs should have access to that information prior

---

[4] FDH/KCHM may claim that this should not be a problem because there is sufficient insurance to meet reasonable settlements of various claims in this case. However, the issue is not whether there is enough insurance to pay settlements. Rather, the issue is whether the insurance is sufficient to satisfy the potential verdicts in excess of insurance.

[5] The evidence in this case will demonstrate that FDH/KCHM did cease to do business after it transferred its assets, workforce, offices, equipment and even its name – FDH – to Velocitel.

to the filing of motions for summary judgment. Stated another way, FDH/KCHM and Velocitel should not be allowed to contend that either the escrow account or the bank accounts are assets of FDH/KCHM that disprove the plaintiffs' theory of Velocitel's liability as a successor corporation and simultaneously deny the plaintiffs the information they need to affirm or refute that claim.

8. The first issue is whether any of the accounts are available to satisfy any judgment against FDH/KCHM in excess of the insurance coverage. To answer the question with regard to the escrow agreement, one must determine whether the escrow fund is an asset of FDH/KCHM or an asset of the shareholders and, if the former, whether the fund is substantial. To answer the first question, one must review the escrow agreement. However, as described below, FDH/KCHM and Velocitel refuse to produce the escrow agreement even though the production would be under seal.[6]

9. Discovery in this case supports the plaintiffs' contention that the transaction was a de facto merger, fraudulent in nature, or lacked good faith. Virtually all of the assets of

---

[6] Defendants FDH/KCHM and Velocitel have previously argued that plaintiffs are trying to get punitive damage discovery. However, that allegation is wrong. Magistrate Judge Aloi has previously held that issues regarding the transaction between KCHM and Velocitel are relevant in this case, particularly to Velocitel's claim that it is not a proper defendant. *See Order Granting as Framed, Plaintiffs' Motion to Compel Defendants Velocitel, Inc. D/b/a FDH Velocitel, FDH, Inc., now known as KCHM, Inc., and FDH Engineering, Inc., now known as KCHM and Associates, Inc. to Produce an Unredacted Copy of the Asset Purchase Agreement* (Doc. 152), 5. Plaintiffs have one motive for these discovery requests: to demonstrate that Velocitel is liable for any excess verdict.

FDH/KCHM, other than insurance, were transferred to Velocitel.[7] The APA even included a transfer of FDH/KCHM's good will to Velocitel allowing Velocitel to add FDH to its name. Virtually all of the employees of FDH/KCHM were transferred to Velocitel as were all of the offices of the FDH/KCHM entities.[8] FDH/KCHM effectively ceased doing any business.

    10. The consideration FDH/KCHM received for the "sale of assets" was promptly transferred out of the FDH/KCHM entities and into the pockets of its various shareholders. As noted above, plaintiffs learned at the July 2018 Rule 30(b)(6) deposition that an escrow fund had been set aside with a portion of the sales proceeds to cover, on information and belief, claims arising out of FDH/KCHM work on SBA contracts. Plaintiffs contend that this escrow fund is relevant to the claims against Velocitel. Obviously, if the escrow fund is substantial, and if it can be used to satisfy judgements against FDH/KCHM in excess of the available insurance, the escrow fund might rebut

---

[7] This information was confirmed by CEO Murphy at his July 17, 2018 deposition as a designee for FDH/KCHM. For example, Mr. Murphy testified as follows:
>   Q   [Karlin]  And just so I make sure I haven't missed anything, as of the consummation of the -- what was referred to as an Asset Purchase Agreement, the FDH/KCHM entities had no assets other than whatever the bank and escrow accounts we were talking about earlier today and a bunch of insurance policies. That was basically what was left in FDH/KCHM?
>   A   [Murphy]  Correct.

Ex. A, Murphy 30(b)(6) Depo., July 17, 2018, p. 60, line 20 - p. 61, line 2. There was a second escrow account that was part of the APA but it dealt with other issues and no longer exists.

[8] *See, e.g.*, Ex. B, Strickland Depo., p. 13, lines 04-05 ("I was the project manager with FDH [...]"), p. 36, lines 10-16 (he was told "the management staff was going to stay in place" after Velocitel took over and most of the non-management staff also stayed in place) *id.*, p. 36, lines 17-24 ("Q. What -- how did your job change from FDH to FDH Velocitel? A. It didn't. Q. On a day-to-day basis, you were still doing the same thing? A. Same thing. Q. Reporting to the same people? A. Same people."); Ex. C Webb Depo., p. 20, lines 17-18 (started at FDH as project engineer), p.24, lines17-21 (was still a project engineer at time of Despard Tower collapse), p. 112, lines 20-113:06 (after the transaction between FDH/KCHM and Velocitel, he still has the same supervisors, worked in the same office and did the same work). Moreover, there is no trace of KCHM as an entity with a website and its headquarters exist only as a residential address.

plaintiffs' contention that FDH/KCHM was left an empty shell with insufficient provisions to protect creditors after the "asset purchase." On the other hand, if the amount in the escrow account is not substantial and/or if it is not available to satisfy a judgment in favor of these plaintiffs, or any of them, in excess of the insurance coverage available to FDH/KCHM in the pending cases, then the facts would tend to support plaintiffs' claims against Velocitel.

11.     This escrow agreement should have been disclosed and produced in response to Request No. 24 of Plaintiff and Third-Party Defendant, Autumn Kirkpatrick's, First Set of Combined Discovery Requests to FDH, Inc. n/k/a KCHM, Inc. and FDH Engineering, Inc. n/k/a KCHM and Associates, Inc. which requested that FDH/KCHM "produce the complete and unredacted Asset Purchase Agreement between FDH Innovation and Velocitel, Inc. and *any related agreements*."[9] The escrow agreement was not disclosed in the FDH/KCHM response.

12.     The escrow agreement is a "related agreement" and is germane to the questions raised by plaintiffs' claim that Velocitel is a proper party to these cases, *i.e.*, whether or not it was left an empty or near empty shell. At his deposition, FDH/KCHM designee Murphy explained that the money was put in the escrow account at the request of SBA.[10] The money appears to have been set aside from the consideration paid by Velocitel to FDH/KCHM to protect SBA's indemnity claim

---

[9] Ex. D, Answers and Responses of FDH, Inc. n/k/a KCHM, Inc. and FDH Engineering, Inc. n/k/a KCHM and Associates, Inc. to First Set Of Combined Discovery Requests of Autumn Kirkpatrick., response to request No. 24. Emphasis added.

[10] Ex. A, p. 18, lines 20-22 where Murphy testified that "the monies that was put in there [escrow fund] and the -- the -- how much was put in there was at the request of SBA.").

against FDH/KCHM for, amongst other things, the Despard Tower cases.[11] SBA apparently realized that the transaction between FDH/KCHM and Velocitel was going to leave FDH/KCHM an empty or nearly empty shell and, as a result, it wanted to ensure that some of the purchase price would be escrowed to protect SBA's potential indemnity claims against FDH/KCHM. As such, the agreement may support the plaintiffs' contention that the APA left FDH/KCHM an empty shell.

13. Further, the fact that there is an escrow agreement to protect SBA's interests vis-a-vis FDH/KCHM does not necessarily mean that the terms of the escrow fund also protect the plaintiffs in the event that the judgments against FDH/KCHM exceed the available insurance.[12] In fact, according to FDH/KCHM stock holder John Fisher, the money in the escrow account is only available to indemnify SBA and has already passed through the corporate entities to the stockholders.

---

[11] Ex. A, p. 20, lines 15-21:
    Q  And is there a list of things that it [the escrow funds] might be used for?
    A  It's -- there are things -- and then general, anything as related to SBA work.
    Q  And what are some of the specifics?
    A  *West Virginia is one*. I don't recall the other specifics.
Emphasis added.

[12]  Q  [Karlin] Am I correct that the escrow agreement says that if this money -- this money, at some point, if it's not needed to satisfy FDH obligations on SBA entities, it will revert to the shareholders?
    A  [Murphy] I'm unaware of the specifics of what it says, but that's the intent.
    Q  So if that money doesn't go to the Despard Tower cases, it reverts to the stockholders?
    [Objections omitted.]
    Q  (By Mr. Karlin) As you understand it?
    A.  As I understand it.
Ex. A, p, 23, line 16 - p. 24, line 1; *See also*, Ex. A, p. 24, lines 13-21 (stating the escrow funds are returned to the shareholders "within a few months.").

Without a copy of the agreement, it is impossible to determine whether the money in the escrow account is an asset of FDH/KCHM.[13]

14. Moreover, as discussed in the companion Plaintiffs' Motion to Compel Responses Plaintiffs' Fifth Set of Combined Discovery Requests to Defendants FDH, Inc., n/k/a KCHM, Inc. and FDH Engineering, Inc., n/k/a KCHM and Associates, Inc. and to Extend Discovery if Necessary, the escrow agreement should have been produced in response to Request Nos. 18-19 of plaintiffs' Fifth Set of Combined Discovery Requests[14] wherein plaintiffs requested various documents including indemnity agreements. The escrow agreement is an indemnity agreement subject to discovery, but FDH/KCHM objected to its production. Yet, even if an indemnity agreement would not normally be discoverable, it is discoverable in this case because it is relevant to the underlying issue as to whether FDH/KCHM was left an empty shell and, if so, whether the APA should be treated as a de facto merger, sham or fraud or an otherwise suspect transaction.

15. For reasons similar to those regarding the escrow agreement, the amount remaining in the two bank accounts should be disclosed because those amounts are relevant to the de facto merger and fraud analyses. This information is materially relevant to Velocitel's argument that it is not a proper party to this case and to plaintiff's contention that Velocitel is a proper party as the successor in interest to FDH/KCHM because FDH/KCHM is an empty shell with no assets other

---

[13] Mr. Fisher testified that he thought the funds in the escrow account were deposited by shareholders, not by FDH/KCHM and would revert to the shareholders not to FDH/KCHM. However, only a review of the agreement will confirm whether the escrow funds are available to pay a verdict against FDH/KCHM and in favor of these plaintiffs that is in excess of insurance coverage.

[14] Ex. E, Answers and Responses of FDH, Inc. n/k/a KCHM, Inc. and FDH Engineering, Inc. n/k/a KCHM and Associates, Inc. to Plaintiffs and Third-party Defendants, Jerry Hill, J. Ron Wright, Autumn Kirkpatrick and Randall McElhaney's Fifth Set of Combined Discovery Requests, Request Nos. 18-19.

than the insurance policies and these back account (including the escrow account). As discussed at paragraph 3, both Mr. Murphy and Mr. Fisher discussed these accounts but were instructed by FDH/KCHM counsel not to answer questions regarding the amounts in the accounts.

16. Plaintiffs certify that they have made a good faith attempt to resolve these issues including several conversations with counsel for FDH/KCHM and several emails and/or letters, but that these efforts have failed. Given the deadline for discovery on August 31, 2018, counsel could not reasonably wait any longer to file this Motion.

17. Plaintiffs' counsel further states that the only reason that plaintiffs are pursuing this Motion is because of the relevance of the requested information to the issues raised in Velocitel's Motion for Judgment on the Pleadings (Doc. 59).

WHEREFORE, plaintiffs request that this Court order FDH/KCHM:

1. To produce, pursuant to the protective order in this case, the escrow agreement;

2. To disclose, pursuant to the protective order in this case, the amounts in the escrow account and the two (2) bank accounts at both the time of the APA transaction and at the present time; and

3. To extend the discovery period to the extent that limited and reasonable follow-up is necessary once the agreement and amounts in the escrow and other accounts are disclosed.

                                                  PLAINTIFFS,
                                                  BY COUNSEL.

/s/ *Allan N. Karlin*
ALLAN N. KARLIN, WV BAR # 1953
JANE E. PEAK, WV BAR # 7213
ALLAN N. KARLIN & ASSOCIATES
174 CHANCERY ROW
MORGANTOWN, WV 26505
304-296-8266
jep@wvjustice.com
ank@wvjustice.com

DAMON L. ELLIS
MANI ELLIS & LAYNE, PLLC
602 VIRGINIA STREET, E., SUITE 200
PO BOX 1266
CHARLESTON, WV 25325-1266
304-720-1000
dlellis@mel-law.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 15th day of August 2018, I electronically filed "Plaintiffs' Motion to Compel Discovery of the Escrow Agreement and Bank Accounts from FDH, Inc., Now Known as KCHM, Inc., FDH Engineering Inc., Now Known as KCHM and Associates, Inc. and to Extend the Discovery Period If Necessary" with the Clerk of the Court using the CM/ECF system which will notify the following individuals:

| | |
|---|---|
| Philip John Sbrolla<br>Matthew C. Schrebe<br>Cipriani & Werner P.C.<br>1144 Market Street<br>Suite 300<br>Wheeling, WV 26003<br>(304) 232-3600<br>(304) 232-3601 (fax)<br>psbrolla@c-wlaw.com | Debra Tedeschi Varner<br>James A. Varner<br>Stanley A. Heflin<br>McNeer, Highland, McMunn & Varner, LC<br>PO Box 2040<br>Clarksburg, WV 26302-2040<br>(304) 626-1100<br>(304) 623-3035 (fax)<br>saheflin@wvlawyers.com |
| Peter T DeMasters<br>Flaherty Sensabaugh & Bonasso PLLC<br>48 Donley St, Suite 501<br>Morgantown, WV 26501<br>(304) 598-0788<br>(304) 598-0790 (fax)<br>peted@fsblaw.com | Paul D. Krepps<br>Marshall, Dennehey, Warner, Coleman, & Goggin<br>2900 USX Tower<br>600 Grant Street<br>Pittsburgh, PA 15219<br>(412) 803-1140<br>(412) 803-1188 (fax)<br>pdkrepps@mdwcg.com |
| John R. Angotti<br>David J. Straface<br>Angotti & Straface, LC<br>274 Spruce St<br>Morgantown, WV 26505<br>(304) 292-4381<br>304-292-7775 (fax)<br>johnangotti@hotmail.com<br>djstraface@frontier.com | James W. Harvey<br>Margolis Edelstein<br>525 William Penn Place, Suite 300<br>Pittsburgh, PA 15219<br>412-642-2380 (fax) |

and by first class mail to the following entities who are not CM/ECF participants in this case:

| | |
|---|---|
| Gerald R. Miller<br>Gerald R. Miller, PC<br>PO Box 2667<br>Muskogee, OK 74402-2667<br>    *Trustee of S. and S. bankruptcy estate* | S. and S. Communication Specialist, Inc.<br>PO Box 628<br>Hulbert, OK 74441-0628 |

/s/ Allan N. Karlin
ALLAN N. KARLIN, WV BAR #1953
ALLAN N. KARLIN & ASSOCIATES
174 CHANCERY ROW
MORGANTOWN, WV  26505
304-296-8266
304-296-8640 (fax)
ank@wvjustice.com